UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Laurel Hill Paper Company, | ) | Case No. 07-10187C-11G |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| All Points Capital Corp., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-2040 |
| | ) | |
| Laurel Hill Paper Company, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

This adversary proceeding came before the court on February 20, 2008, for hearing on a motion for summary judgment filed by Laurel Hill Paper Company, the Debtor in the underlying chapter 11 case and one of the defendants in this adversary proceeding. Having considered the motion, the authorities submitted in support of and in opposition to the motion and the arguments of counsel, the court has concluded that the motion should be denied.

BACKGROUND

On February 13, 2007, Laurel Hill Paper Company ("Debtor") filed a petition in this court seeking relief under chapter 11 of the Bankruptcy Code. The assets of the Debtor included a manufacturing facility located in Cordova, North Carolina. On

May 17, 2007, an order was entered granting the Debtor's motion for approval of the sale of the Cordova facility at a price of $22,700,000. On May 29, 2007, the sale of the Cordova facility closed and the Debtor received net proceeds of $21,965,868.27.

The assets that were sold pursuant to the May 17, 2007 order consisted of the Cordova real estate and buildings, the machinery and equipment at the Cordova facility, the inventory, machinery and equipment spare parts and supplies located at the Cordova facility and various vehicles and trailers owned by the Debtor. At the time of the sale, the assets that were sold were subject to various liens and encumbrances, which were transferred to the sale proceeds by the order authorizing the sale.

At the time of the sale, there were some fifteen entities that held or claimed liens or security interests with respect to one or more of the assets that were sold. The parties to this proceeding include the various entities who claim they are entitled to a portion of the sale proceeds based upon their lien or security interest having been transferred to the sale proceeds. The relief sought in this proceeding is a determination of the priority, extent and value of the liens and encumbrances that were transferred to the sale proceeds.

The claimants in this proceeding include American Stainless & Supply, LLC, Mechanical Supply Company, Piedmont Lift & Truck Service, Inc., and Superior Cranes, Inc. (the "44A Claimants").

The 44A Claimants contend that they performed labor or furnished materials for improvements at the Cordova facility for which they have not been paid and that each has a lien that secures their unpaid balances pursuant to Article 2 (entitled "Statutory Liens on Real Property") of Chapter 44A (entitled "Statutory Liens and Charges"), of the General Statutes of North Carolina. In addition to claiming a lien against the proceeds from the Cordova real estate, the 44A Claimants contend that their liens also extended to a portion of the machinery and equipment at the Cordova facility and that they are entitled to the proceeds from such machinery and equipment, as well.

There are other parties to this proceeding who also claim to have a lien or security interest in the same items of machinery and equipment based upon having perfected a security interest pursuant to Article 9 of the Uniform Commercial Code as adopted in North Carolina. Based upon their Article 9 security interests, these claimants maintain that they are entitled to the proceeds realized from the items of machinery and equipment in question.

If the 44A Claimants are successful in establishing a 44A lien against the proceeds from any of the items of machinery and equipment that were sold, a conflict will arise between the 44A Claimants and the Article 9 claimants who hold a security interest with respect to those items of machinery and equipment.

## THE MOTION FOR SUMMARY JUDGMENT

The Debtor asserts in the motion for summary judgment that the potential conflict between the 44A Claimants and the Article 9 claimants can be resolved at this time as a matter of law. The Debtor asserts that even if it is assumed that the 44A Claimants are entitled to a 44A lien and that the contested items of machinery and equipment were fixtures, the Article 9 claimants are entitled to prevail as a matter of law. The Debtor bases this argument upon the provision in Article 9 of the Uniform Commercial Code ("UCC") that has been codified in North Carolina as N.C. Gen. Stat. § 25-9-334(e)(3).[1] Because the court has concluded that section 25-9-334 is not applicable to the 44A liens claimed by the 44A Claimants, the court has concluded that the Debtor's argument must be rejected and the motion for summary judgment denied.

## ANALYSIS

The applicability of Article 9 under North Carolina law is controlled by N.C. Gen. Stat. § 25-9-109 which defines the scope of Article 9. Subsection (d) of section 25-9-109 is entitled

---

[1] Section 25-9-334(e)(3) provides:

> A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if . . . [t]he conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this Article;

"Inapplicability of Article" and provides as follows in section 25-9-109(d)(2):

> This Article does not apply to . . . [a] lien, other than an agricultural lien, given by statute or other rule of law for services or materials, but G.S. 25-9-333[2] applies with respect to priority of the lien . . . ."

The effect of section 9-109(d)(2) is described by a leading treatise on the UCC as follows:

> Section 9-109(d)(2) [Rev] excludes from Article 9's coverage those liens which may be broadly characterized as artisan's or suppliers liens, except where the lien is dependent upon possession, in which case revised Section 9-333 [Rev] governs priority. . . . Article 9 is applicable only in resolving priority disputes between possessory artisan's and supplier's liens and security interests. If the lien given by statute or common law is a nonpossessory lien, revised Section 9-333 [Rev] does not provide a priority rule, and the lien is entirely excluded from Article 9's coverage. This result means, among other things, that priority disputes between holders of nonpossessory artisan's liens (whether given by statute or by the common law) and secured parties are to be resolved outside of Article 9.

9A HAWKLAND UCC SERIES § 9-109:8 (2007).

To the extent the 44A Claimants are entitled to or have liens, such liens are statutory liens because such liens arise solely by force of statute, to wit, Article 1 of Chapter 44A of the General

---

[2] G.S. 25-9-333 is limited to possessory liens in which the effectiveness of the lien depends on the claimant having possession of the goods and has no application in this case.

Statutes of North Carolina.[3]  Additionally, such liens are for services or materials supplied by the 44A Claimants and do not depend upon possession on the part of the claimant.  Therefore, Article 9, including section 25-9-334, is not applicable to 44A liens and has no role in determining the priority of the 44A liens. In discussing the applicability of section 9-334, HAWKLAND states:

> By its terms, revised Section 9-334 [Rev] does not govern priority disputes between fixture financers; between fixture financers and other Article 9 security interests and claimants under mechanic or materialmen lien statutes or, worse, the resolution of disputes between subordinate fixture financers and prior real estate interests.

9B HAWKLAND UCC SERIES § 9-334:1 (2007).

As noted in HAWKLAND, the use of the word "encumbrancer" in section 9-344 raises a question regarding whether section 9-334 should be treated as applicable to statutory liens.  An "encumbrancer" is an entity with a claim against real property such as a lien or other encumbrance.[4]  N.C. Gen. Stat. 25-9-102(32) defines an "encumbrance" as follows:

> "Encumbrance" means a right, other than an ownership interest, in real property.  The term includes mortgages and other liens on

---

[3] Black's Law Dictionary 944 (8th ed. 2004), defines a statutory lien as a "lien arising solely by force of statute, not by agreement of the parties.  Examples are federal tax liens and mechanics liens."  Section 101(53) of the Bankruptcy Code defines a statutory lien as a "lien arising solely by force of a statute on specified circumstances or conditions. . . ."

[4] While "encumbrancer" is not defined in Article 9, Black's Law Dictionary 568 (8th ed. 2004), defines "encumbrancer" as "[o]ne having a legal claim, such as a lien or mortgage, against property."  Webster's New Twentieth Century Dictionary 598 (2d ed. 1983), defines "encumbrancer" as "in law, one who has an encumbrance or legal claim on an estate."

real property."

Because of this broad definition of encumbrance, section 9-334(e) arguably could be read as being applicable to a statutory lien on the theory that the holder of such a lien is an encumbrancer. However, such a reading of section 9-334 is rejected in HAWKLAND, which concludes that 9-334 should be read as not being applicable to statutory liens:

> It is doubtful that revised Article 9 [Rev] intended to overlap such statutes [lien statutes], given the lack of coverage of statutory liens and real estate generally as expressed in revised § 9-109(d)(2) [Rev]; the lack of coordination with these statutes which are not uniform; and the absence of any indication such was intended in the Official Comments. Accordingly, the Code should be so construed.

9B HAWKLAND UCC SERIES § 9-334:1, n. 7 (2007).

This court agrees that the UCC should be so construed, and adopts the construction that the priority of nonpossessory statutory liens such as 44A liens are not determined under any provision of Article 9. Section 9-109(d)(2) refers specifically to liens given by statute for services or materials and it seems unlikely that the general definition of encumbrance contained in section 9-102(32) was intended to undo or create an exception to the specific exclusion contained in section 9-109(d)(2). Also, as previously noted, section 9-109(d)(2) in fact does contain an exception. After specifying that Article 9 does not apply to statutory liens for services or materials, section 109(d)(2) then

provides "but G.S. 25-9-333 applies with respect to priority of the lien." Given the inclusion in section 25-9-109(d)(2) of this exception for G.S. 25-9-333, it is reasonable to conclude that if a similar exception had been intended for section 25-9-334, it would have been included in section 25-9-109(d)(2) as was the exception for section 25-9-333. Finally, Hawkland points out that "[f]or a brief period, revised Article 9 covered all statutory nonpossessory liens in a like manner, but these latter provisions did not survive, and revised Article 9 [Rev], as finally promulgated, does not cover these liens as the extensive diversity of such liens made uniform treatment very difficult to provide in a rational manner." 9A HAWKLAND UCC SERIES § 9-109:8 (2007).

The result is that N.C. Gen. Stat. § 25-9-334 has no applicability in determining priority as between the 44A Claimants and the Article 9 claimants. See First Md. Leasecorp. v. M/V Golden Egret, 764 F.2d 749, 755 (11th Cir. 1985)(stating that the Uniform Commercial Code is "totally inapplicable to nonpossessory liens" and the "question of their priority in relation to secured interests must be determined by existing statutes and pre-code law"); Faulkner v. Contractor's Glass Co., Inc. (In re Contractor's Glass Co., Inc.), 152 B.R. 270, 272 (Bankr. W.D. Ark. 1992)("Materialmen's liens are excluded from the UCC."); Security Benefit Life Ins. Corp. v. Fleming Companies, Inc., 908 P.2d 1315, 1321 (Kan. App. 1996)(stating that "priority dispute between a

nonpossessory, statutory lien and a security interest is not governed by Article 9"); <u>Church Bros. Body Service, Inc. v. Merchants Nat. Bank & Trust Co. of Indianapolis</u>, 559 N.E.2d 328, 331 (Ind. App. 1990)(stating that court should "look to the lien statutes and common law to determine the priority status of a non-possessory mechanic's lien"); <u>Ledger Mill Co., Inc. v. Kleen-Leen, Inc.</u>, 563 P.2d 132, 135 (Okla. 1977)("It is clear that the Uniform Commercial Code does not control the question of the priority between non-possessory liens and perfected security interests.").

## CONCLUSION

Since the Debtor's motion for summary judgment relies upon N.C. Gen Stat. 25-9-334, which is not applicable with respect to priority questions involving 44A liens, the motion must be denied. An order so providing is being entering contemporaneously with the filing of this memorandum opinion.

This 24th day of March, 2008.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

SERVED ON ALL PARTIES IN INTEREST